CITY OF SOUTH MILWAUKEE,
Plaintiff-Respondent,

v.

Todd J. KESTER,
Defendant-Appellant.†

Court of Appeals

*No. 2012AP724. Submitted on briefs January 10, 2013.
—Decided March 13, 2013.*

2013 WI App 50

(Also reported in 830 N.W.2d 710.)

† Petition for Review filed.

338

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Laurence J. Dupuis* of *American Civil Liberties Union of Wisconsin Foundation, Inc.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph G. Murphy* of *Murphy & Leonard, LLP*, South Milwaukee.

A nonparty brief was filed by *Ellen Henak* of *Henak Law Office, S.C.* of Milwaukee, for *Wisconsin Association of Criminal Defense Lawyers*.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. REILLY, J. Todd J. Kester was convicted of sexually assaulting a child in 2000. In April 2010, Kester moved into a residence in the City of South Milwaukee that was within 1000 feet of an elementary school. The City has an ordinance that prohibits child sex offenders such as Kester from living within 1000 feet of elementary schools. Kester was told by the City that he had to move. Kester refused. The City filed an action in circuit court, asking the court to declare Kester's residency a public nuisance and to enjoin him from living in the home. The circuit court granted the injunction and ordered Kester to move.

¶ 2. Kester appeals, arguing that his residency should not have been declared a nuisance without an individual determination of his dangerousness, that his right to procedural due process was denied as he was not permitted to show he did not pose a risk of harm to children, that the City's ordinance is preempted by state law, and that the City's ordinance as applied to him violates the Double Jeopardy and Ex Post Facto Clauses of the United States and Wisconsin Constitutions. We disagree and affirm the circuit court.

## BACKGROUND

¶ 3. Kester was convicted on November 6, 2000, of second-degree sexual assault of a child in violation of Wis. Stat. § 948.02(2) (2011–12)[1] for an offense that occurred while he lived in Sheboygan. In April 2010, Kester moved to a residence in the City of South Milwaukee within 1000 feet of Lakeview School, a public elementary school. The City had in effect an ordinance

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

(the Ordinance) forbidding anyone convicted of committing certain sex offenses against children, including § 948.02(2), from living within 1000 feet of a school or other facility found to be frequented by children. SOUTH MILWAUKEE, WIS., MUN. CODE (SMMC) § 23.167–2, -3 (effective Aug. 30, 2007). The Ordinance also applied to individuals found not guilty by reason of mental defect or disease of committing one of the enumerated offenses against children. SMMC § 23.167–3. The Ordinance's declared purpose was to "protect[] the health and safety of children in South Milwaukee from the risk that convicted sex offenders may re-offend in locations close to their residences." SMMC § 23.167–1.

¶ 4. The Ordinance provided certain exceptions: for people who had established residences in South Milwaukee prior to the effective date of the Ordinance (August 30, 2007), for those who resided in their homes prior to a children's facility moving within 1000 feet of their residences, for those living in South Milwaukee at the time of their most recent child sex convictions; and for minors or wards under guardianship. SMMC § 23.167–4, -5. For all others, the Ordinance required the City attorney, upon notification of a violation by the police chief, to "bring an action in the name of the City in the Circuit Court of Milwaukee County to permanently enjoin such residency as a public nuisance." SMMC § 23.167–7.

¶ 5. After Kester refused to move, the City filed a complaint in Milwaukee County Circuit Court requesting that Kester's continued residency be found a public nuisance and that the court issue an injunction requiring him to move. Kester admitted that he was convicted under WIS. STAT. § 948.02(2) in November 2000 while residing in Sheboygan and that he currently lived within 1000 feet of Lakeview School. Kester moved for judg-

ment on the pleadings on various grounds, including those raised in this appeal. The court denied Kester's motion.

¶ 6. The City brought two motions to the court: first, for partial summary judgment on the issue of whether Kester's continued residency constituted a public nuisance and, second, for an order preventing Kester from offering evidence that he did not pose a risk of reoffense and was not a public nuisance. The court granted both of the City's motions. The court ultimately issued an injunction and ordered Kester to move. Kester appeals.

## DISCUSSION

¶ 7. Kester raises four issues on appeal. His first two arguments are related in that he asserts that the circuit court erred in issuing an injunction without determining whether his residency constituted an actual public nuisance based on his risk of reoffending and, secondly, that his right to procedural due process is violated by applying a nuisance "per se" standard to him. Kester argues next that the Ordinance is preempted by state laws regulating sex offenders and, lastly, that the Ordinance as applied to him violates both the Double Jeopardy and Ex Post Facto Clauses of the United States and Wisconsin Constitutions.

*Kester's Status Coupled with his Residency Within*
*1000 Feet of a School Constitutes a Public Nuisance*
*Per Se Under the Ordinance*

■
¶ 8. Kester argues that before a court may find him to be a public nuisance under the Ordinance, the City must show that he is a nuisance by his acts or his

likelihood to act in a detrimental way. Stated differently, Kester argues that in order to enjoin his continued residency within 1000 feet of Lakeview School, the City must establish that his residency is an "actual nuisance" utilizing the common-law definition of nuisance.[2] We address Kester's argument first by examining the power of municipalities to govern nuisances and finish by examining the ordinance in question.

¶ 9. Municipalities have broad authority through their police powers to protect "the health, safety, and welfare" of their residents, including the ability to define and take action against public nuisances. *See* WIS. STAT. § 62.11(5); *Dallmann v. Kluchesky*, 229 Wis. 169, 173, 175–76, 282 N.W. 9 (1938). A nuisance per se may be established by law, and no actual injurious consequences are required to support a finding of a nuisance per se. *In re Eldred*, 46 Wis. 530, 543, 1 N.W. 175 (1879). When a municipality has enacted an ordinance that defines a public nuisance per se, courts should not interfere in this determination absent a showing of "oppressiveness or unreasonableness." *Boden v. City of Milwaukee*, 8 Wis. 2d 318, 325, 99 N.W.2d 156 (1959). An injunction is a permissible remedy to enforce an ordinance establishing a nuisance per se. *See Village of Wind Point v. Halverson*, 38 Wis. 2d 1, 11, 155 N.W.2d 654 (1968).

¶ 10. The City of South Milwaukee determined that certain types of child sex offenders who live within 1000 feet of children's facilities interfere substantially in the enjoyment of life, health, and safety of the

---

[2] "A nuisance is an unreasonable activity or use of property that interferes substantially with the comfortable enjoyment of life, health, safety of another or others." *State v. Quality Egg Farm, Inc.*, 104 Wis. 2d 506, 517, 311 N.W.2d 650 (1981).

residents of the City and constitute public nuisances. The City enacted SMMC § 23.167 to preclude such nuisances. The clear language of the Ordinance establishes a public nuisance per se. The Ordinance employs two criteria that, subject to limited exceptions, define a public nuisance: (1) a person who has been convicted or found not guilty by reason of a mental defect or disease of one of a number of child sex crimes and (2) that person's residency within 1000 feet of any one of an enumerated list of facilities. SMMC § 23.167–2, -3. No other evidence is required to find the existence of a public nuisance for which an injunction may be issued.

¶ 11. Notably, Kester does not argue that the Ordinance's criteria (his status as a convicted child sex offender and the distance between his residence and the school) are oppressive or unreasonable. *See Boden*, 8 Wis. 2d at 325. Instead, Kester argues that the language of the Ordinance requires an individual determination that he constitutes an "actual nuisance."[3] We think it clear that such an individual determination is not required by the Ordinance when read in its entirety. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. The Ordinance forbids certain types of child sex offenders from residing within 1000 feet of certain facilities. SMMC § 23.167–3. The Ordinance carves out exceptions to this rule, which do not involve an individual risk assessment. SMMC § 23.167–4, -5. The City attorney has no

---

[3] Kester focuses on SMMC § 23.167–7, which requires the police chief, upon learning of a violation, to issue a "written determination . . . that upon all the facts and circumstances and the Purpose of this Chapter, such residence occupancy presents an activity or use of property that interferes substantially with the comfortable enjoyment of life, health, safety of another or others."

discretion over whether to bring an action to enjoin a public nuisance when presented with evidence of a violation by the police chief. *See* SMMC § 23.167–7.

¶ 12. The City must prove that Kester falls within the type of sex offender identified by the Ordinance and that Kester resides within 1000 feet of an identified children's facility; the City need not prove any "detrimental acts" engaged in by Kester to obtain an injunction. The Ordinance on its face establishes that Kester's status as a convicted child sex offender under Wis. Stat. § 948.02(2) coupled with his residing within 1000 feet of a school constitutes a public nuisance per se for which an injunction may be issued.

*Kester's Right to Procedural
Due Process Was Not Violated*

¶ 13. Kester next argues that the denial of a hearing as to whether his continued residency substantially interferes with the safety of others deprives him of important liberty and property rights without due process. "Procedural due process requires that a party whose rights may be affected by government action be given an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." *Wilke v. City of Appleton*, 197 Wis. 2d 717, 726, 541 N.W.2d 198 (Ct. App. 1995). "[A]n opportunity to be heard in court at a meaningful time and in a meaningful manner" satisfies procedural due process. *Id.* at 727. Due process claims raise questions of law that we review de novo. *See id.* at 726.

¶ 14. Kester's due process argument misses the mark. As we have explained, in enacting the Ordinance, the City identified the criteria for what constitutes a

public nuisance per se. Subject to a limited list of exceptions, the only material issues are (1) whether Kester was convicted of one of the child sex offenses listed in the Ordinance and (2) whether Kester was living within 1000 feet of a school. Kester had an opportunity to contest each issue before the circuit court but did not do so. Proof of future bad acts by Kester is not required nor material to a determination of whether Kester's residency constitutes a public nuisance. *See Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003). Procedural due process does not entitle Kester to a hearing on an immaterial issue. *See id.*

*State Law Does Not Preempt the Ordinance*

¶ 15. Kester contends that Wisconsin's comprehensive regulatory scheme regarding sex offenders preempts the Ordinance. Whether state law preempts a local ordinance raises a question of law that we review de novo. *DeRosso Landfill Co. v. City of Oak Creek*, 200 Wis. 2d 642, 652, 547 N.W.2d 770 (1996).

¶ 16. Wisconsin municipalities have broad authority to act under the home-rule powers granted by article XI, section 3 of the Wisconsin Constitution and WIS. STAT. § 62.11(5). This authority is limited, however, when it comes to subject matters of "statewide concern." *U.S. Oil, Inc. v. City of Fond du Lac*, 199 Wis. 2d 333, 339–40, 544 N.W.2d 589 (Ct. App. 1996). Thus, in determining whether the Ordinance is preempted by state law, we must first determine whether the subject area being regulated is one of "statewide concern." *Id.*

¶ 17. The state legislature has adopted many laws related to sex offenders, including those whose victims

are children. *See, e.g.,* Wis. Stat. §§ 301.03(3b), (19)-(20), 301.48, 302.116, 304.06(1q), (2m), 939.615–939.617, 939.635, 948.02–948.025, 948.05–948.13, and Wis. Stat. ch. 980. This statutory scheme is both "complex and comprehensive" and deals with almost "all aspects" of the prosecution, punishment, confinement, and rehabilitation of such offenders. *See Anchor Sav. & Loan Ass'n v. Equal Opportunities Comm'n,* 120 Wis. 2d 391, 397–98, 355 N.W.2d 234 (1984). Restricting where convicted child sex offenders may live in relation to where children congregate is within the discretion granted to the department of corrections. *See* §§ 301.03(19)-(20), 301.48(2g), (3)(c). Regulation of convicted child sex offenders, including where they may live after release from confinement, is clearly a matter of both statewide and local concern.

¶ 18. The fact that the regulation of sex offenders is a matter of statewide concern, however, does not preclude municipalities such as the City from using their home-rule powers to impose further restrictions consistent with those imposed by the state. *See Fox v. City of Racine,* 225 Wis. 542, 545–46, 275 N.W. 513 (1937). An ordinance regulating an area of statewide concern is preempted only if: (1) the legislature has expressly withdrawn the power of municipalities to act, (2) the ordinance logically conflicts with state legislation, (3) the ordinance defeats the purpose of state legislation, or (4) the ordinance violates the spirit of state legislation. *Anchor Sav. & Loan Ass'n,* 120 Wis. 2d at 397.

¶ 19. Kester contends that the Ordinance defeats the purpose and violates the spirit of the state's scheme to reassimilate sex offenders into society and protect public safety, *see* Wis. Admin. Code § DOC 328.04(1) (Dec. 2006), by minimizing the population density of sex

offenders, *see* WIS. STAT. § 301.03(19). Accepting Kester's contention as to the purpose and spirit of the state's laws, the Ordinance is not demonstrably contrary to these goals. The purpose of the Ordinance is to reduce the risk of reoffense by child sex offenders. *See* SMMC § 23.167–1. Such a purpose advances both the reassimilation of sex offenders into the larger community and the protection of the public. Kester has not shown that the Ordinance defeats the purpose or violates the spirit of the state laws regulating child sex offenders. Accordingly, we find that the Ordinance is not preempted by state law.

### *The Ordinance Does Not Violate Kester's Constitutional Protections Against Double Jeopardy and Ex Post Facto Laws*

¶ 20. Lastly, Kester contends that the Ordinance violates his right to be free from additional punishment under the Double Jeopardy and the Ex Post Facto Clauses of the United States and Wisconsin Constitutions. The relevant protection provided by the Double Jeopardy Clause is the right of a criminal defendant to be free from multiple punishments for the same offense. *See State v. Carpenter*, 197 Wis. 2d 252, 263, 541 N.W.2d 105 (1995). The relevant protection provided by the Ex Post Facto Clause prevents the government from increasing the punishment for a crime after its commission. *Id.* at 273.

¶ 21. In any challenge to an ordinance on double jeopardy and ex post facto grounds, the threshold question is whether the ordinance is punitive, as both clauses apply only to punitive laws. *State v. Rachel*,

2002 WI 81, ¶ 22, 254 Wis. 2d 215, 647 N.W.2d 762. Whether an ordinance may be considered punitive is an issue of law that we review independently. *State v. McMaster*, 206 Wis. 2d 30, 36, 556 N.W.2d 673 (1996).

¶ 22. We employ a two-part "intent-effects" test to answer whether a law applied retroactively is punitive and, therefore, an unconstitutional violation of the Double Jeopardy and Ex Post Facto Clauses. *See Rachel*, 254 Wis. 2d 215, ¶¶ 39–40, 42. First, we look at the intent of the legislative body in creating the law. *See Smith v. Doe*, 538 U.S. 84, 92 (2003). If we find the intent was to impose punishment, the law is considered punitive and the inquiry ends there. *Id.* If we find that the intent was to impose a civil and nonpunitive regulatory scheme, we must next determine whether the effects of the sanctions imposed by the law are "so punitive . . . as to render them criminal." *Rachel*, 254 Wis. 2d 215, ¶ 42 (citation omitted). We consider a number of factors in this part of the test, none of which is dispositive to our inquiry. *See Smith*, 538 U.S. at 97. Only the "clearest proof" will convince us that what a legislative body has labeled a civil remedy is, in effect, a criminal penalty. *Rachel*, 254 Wis. 2d 215, ¶ 42 (citation omitted).

¶ 23. Determining legislative intent is primarily a matter of statutory construction that asks whether the legislative body, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Smith*, 538 U.S. at 93 (citation omitted). "[C]onsiderable deference must be accorded to the intent as the legislature has stated it." *Id.* Kester argues that the City intended to create a punitive law by referencing the recitals to the Ordi-

nance, in which the City declared that it "places a high priority on maintaining public safety through . . . dependency upon laws that deter and punish criminal behavior."[4] We think this one reference to punishment is outweighed by express language in the Ordinance declaring it to be "a regulatory measure aimed at protecting the health and safety of children in South Milwaukee." SMMC § 23.167–1. This clear statement supports the City's contention that it intended to enact a nonpunitive, civil regulatory scheme and not a punitive law.

¶ 24. Our finding that the City intended the Ordinance to be a nonpunitive, civil regulatory measure aimed at protecting the community may be overcome if the "sanctions" imposed by the ordinance are "so punitive in form and effect as to render them criminal." *See Rachel*, 254 Wis. 2d 215, ¶ 42 (citation omitted). We conclude that they are not. Convictions have consequences. *See Smith*, 538 U.S. at 103. Just because one of these consequences is a legislative restriction based on an offender's status does not make it punitive. *See State v. Thiel*, 188 Wis. 2d 695, 704–05, 524 N.W.2d 641 (1994). A mere connection to criminal activity is not sufficient to render an ordinance punitive. *Rachel*, 254 Wis. 2d 215, ¶ 58.

¶ 25. The United States Supreme Court has articulated a list of nonexhaustive factors to be considered in determining whether a sanction is punitive in nature, *see Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963), for purposes of double jeopardy and ex

---

[4] *See* South Milwaukee, Wis., An Ordinance to Create Section 23.167 of the Municipal Code to Provide Regulations Relating to Residency Restrictions for Sex Offenders and Directing Action for Injunctive Relief for Violation Thereof (effective Aug. 30, 2007).

post facto challenges, *see Smith*, 538 U.S. at 97. Kester argues four of these factors are present: (1) the Ordinance involves an affirmative disability or restraint, (2) the Ordinance's restrictions historically have been regarded as punishment, (3) the Ordinance's operation will promote retribution and deterrence, and (4) the Ordinance is excessive in relation to its nonpunitive purpose. *See id.* at 97, 102. Although we agree that some of the factors are present to a degree, Kester has not provided the "clearest proof" that the Ordinance is punitive, and therefore, his double jeopardy and ex post facto challenges fail.

¶ 26. We start by considering whether the Ordinance constitutes an affirmative disability or restraint. We agree with Kester that the Ordinance imposes restraints upon where Kester may live within the City of South Milwaukee. But we also state the obvious: "[N]ot all forms of restraint are equivalent to punishment." *Rachel*, 254 Wis. 2d 215, ¶ 47. Minor and indirect restraints are unlikely to have a punitive effect. *Smith*, 538 U.S. at 100. As the Ordinance unquestionably involves affirmative restraints on certain sex offenders, the question for us is whether those restraints are minor and indirect. We agree with Kester that they are not. Although there are exemptions for some child sex offenders and the Ordinance leaves areas where offenders may reside, the Ordinance imposes significant affirmative restraints on Kester and other child sex offenders as to where they may live within South Milwaukee. The Ordinance constrains Kester and his family from living in a large number of residences in South Milwaukee. These restraints are neither minor nor indirect. *See id.* The fact that the Ordinance imposes an affirmative restraint on where Kester may

live, however, does not end our inquiry into whether the effects of the Ordinance are punitive. Many civil regulations involve affirmative restraints that are neither minor nor indirect.

¶ 27. Kester next argues that the Ordinance's restrictions on where he may live resemble historical punishments of shaming and banishment. We disagree. Banishment involves the permanent expulsion of an offender from an entire community, whereas the Ordinance restricts where certain child sex offenders may reside within South Milwaukee. *See Doe v. Miller*, 405 F.3d 700, 719 (8th Cir. 2005). Unlike the traditional punishment of shaming, the Ordinance does not hold up a violator for face-to-face humiliation by his or her fellow citizens. *See Smith*, 538 U.S. at 98. Equally unavailing is Kester's contention that the similarities between the restrictions imposed by the Ordinance and restrictions that may accompany probation and parole transform the restrictions into punishment. Conditions accompanying probation or parole are not punishment but rather means of rehabilitation. *See Prue v. State*, 63 Wis. 2d 109, 114, 216 N.W.2d 43 (1974).

¶ 28. Kester also argues that the Ordinance is punitive in that it promotes deterrence and retribution, two of the traditional aims of punishment. We concede that the Ordinance has as its primary aim the deterrence of sex crimes against children, but the "mere presence of a deterrent purpose" without more is not enough to make criminal a civil regulation. *See Smith*, 538 U.S. at 102 (citation omitted). The City's regulation is aimed at deterrence and protection of its citizens, not punishing Kester. Furthermore, we do not agree with Kester that the Ordinance is retributive as it is imposed on all child sex offenders without regard to their degree

of individual dangerousness. The City in enacting the Ordinance was not obligated to attempt to define and differentiate the degree of dangerousness of convicted sex offenders. The City's purpose in enacting the Ordinance was to promote the safety of its citizens rather than categorize convicted sex offenders. The intent of the Ordinance is not retributive and any deterrent purpose it serves so as to protect the community is insufficient to constitute punishment.

██

¶ 29. Kester's final argument is that the Ordinance constitutes punishment as the restrictions that it imposes are excessive when compared to its asserted nonpunitive purpose. This last argument is related to the inquiry into "whether the regulatory scheme has a 'rational connection to a nonpunitive purpose.' " *Miller*, 405 F.3d at 721 (quoting *Smith*, 538 U.S. at 102). "A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Smith*, 538 U.S. at 103. Nor does the measure need to represent "the best choice possible to address the problem [the legislative body] seeks to remedy." *Id.* at 105. "The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Id.*

¶ 30. Kester points to the Ordinance's application to all child sex offenders regardless of their individual circumstances or dangerousness as well as the permanency of the Ordinance's application. We state the obvious: All convicted child sex offenders have proven themselves to be dangerous. A municipality is not required to regulate its police powers based upon someone's prognostication as to the future acts of a convicted child sex offender. Kester argues that other municipalities in Wisconsin have enacted less onerous

ordinances to show that the City's objectives can be met by less drastic means. That fact may be true but, contrary to Kester's argument, our laws provide that the City may make "reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Id.* at 103. Such categorical judgments do not require individual risk assessments to survive challenges on double jeopardy or ex post facto grounds. *See id.* at 104. Moreover, the City did not have to enact the best measure to reach its aims, only a reasonable one. *See id.* at 105. While we agree that the Ordinance places burdens upon Kester and other child sex offenders who wish to live in South Milwaukee, we cannot say these restrictions are not reasonable to achieve the City's purpose of protecting against the risk that a child sex offender may reoffend.

¶ 31. Kester fails to offer the "clearest proof" that the Ordinance is a criminal and punitive measure rather than its stated purpose as a civil, nonpunitive regulatory scheme. As such, the City's Ordinance as applied to him does not violate the Double Jeopardy and Ex Post Facto Clauses.

## CONCLUSION

¶ 32. We affirm as the Ordinance was properly applied to Kester. Kester has no right under the Ordinance for an individual determination as to whether he poses a risk of reoffending. The Ordinance is not preempted by state law, and the Ordinance as applied to Kester does not violate the Double Jeopardy or Ex Post Facto Clauses of the United States and Wisconsin Constitutions.

*By the Court.*—Order affirmed.