*337 SHIRLEY S. ABRAHAMSON, J.
¶ 52. (dissenting). An ex post facto law is any law which "makes more burdensome the punishment for a crime, after its commission ...." State v. Thiel, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (quoting Collins v. Youngblood, 497 U.S. 37, 42 (1990)).
¶ 53. When Scruggs committed the crime, she faced the possibility of a $250 DNA surcharge. Under the amended DNA surcharge law, Scruggs now faces the certainty of a $250 DNA surcharge.
¶ 54. For ex post facto purposes, the critical question is whether the mandatory DNA surcharge statute makes more burdensome the punishment for Scruggs' crime.
¶ 55. The law of this state (accepted by the parties and the majority opinion) is that the mandatory, per-conviction DNA surcharge statute violates the ex post facto clause when applied to a defendant convicted in a single case of multiple crimes committed prior to the effective date of the mandatory DNA surcharge statute. See State v. Radaj, 2015 WI App 50, ¶¶ 35-36, 363 Wis. 2d 633, 866 N.W.2d 758.[1]
¶ 56. In contrast, the question in the instant case is whether the mandatory DNA surcharge law requiring a circuit court to impose a single $250 DNA surcharge for the conviction of a single crime violates the ex post facto clause when applied to a crime committed prior to the effective date of the statute.
*338 ¶ 57. To me, a statute mandating a DNA surcharge is obviously more burdensome on a defendant than a statute granting a circuit court discretion to impose a DNA surcharge on a defendant. Indeed United States Supreme Court case law supports this approach. See Lindsey v. Washington, 301 U.S. 397, 400-02 (1937) (changing penalty from 15-year maximum imprisonment to mandatory 15-year imprisonment violated ex post facto clause); Weaver v. Graham, 450 U.S. 24, 32 n.17 (1981) ("a law may be retrospective not only if it alters the length of the sentence, but also if it changes the maximum sentence from discretionary to mandatory").
¶ 58. Thus, to me, the question becomes whether the more burdensome mandatory DNA surcharge is punishment for ex post facto purposes.
¶ 59. Radaj already recognizes that a mandatory surcharge can constitute punishment for ex post facto purposes.
¶ 60. Although not considered in Radaj, the mandatory surcharge looks like punishment because the statute explicitly makes it part of a defendant's sentence. Other statutorily imposed surcharges, fees, and costs are not explicitly part of the sentence.[2]
¶ 61. Because the DNA surcharge is part of the sentence and because the sentence is the means by which circuit courts impose punishment, the DNA *339 surcharge has been considered part of punishment.[3] See State v. Nickel, 2010 WI App 161, 330 Wis. 2d 750, 794 N.W.2d 765.
¶ 62. In Nickel, the defendant moved to vacate the DNA surcharge imposed under the permissive DNA surcharge law. The court of appeals explained that when "a defendant moves to vacate a DNA surcharge, the defendant seeks sentence modification." Nickel, 330 Wis. 2d 750, ¶ 5. The court of appeals rejected "the notion that the DNA surcharge is neither a sentence nor a component of a sentence. Nickel, 330 Wis. 2d 750, ¶ 6.[4]
¶ 63. Scruggs' judgment of conviction and sentence explicitly states that she must submit a DNA sample and pay a $250 surcharge.[5] Following the reasoning of Nickel, the DNA surcharge (statutorily *340 mandated as part of Scruggs' sentence) constitutes punishment for purposes of the ex post facto clause.
¶ 64. I could end here and conclude that the mandatory DNA surcharge statute is punishment and its retroactive application runs afoul of the prohibition against ex post facto laws in the federal and state constitutions.[6]
¶ 65. Nevertheless, I continue my ex post facto analysis, focusing on whether the mandatory DNA surcharge statute has a punitive effect.[7]
*341 ¶ 66. In an ex post facto analysis, the text of the challenged statute must be scrutinized. The proper approach is to determine whether the mandatory DNA surcharge statute is an unconstitutional ex post facto violation on its face.[8]
¶ 67. The text of the statutory mandatory DNA surcharge demonstrates that the DNA surcharge is punitive in effect and not merely a reasonable civil charge to fund the estimated costs of state DNA programs:
• The DNA surcharge is imposed and collected as part of the sentence in every criminal conviction, regardless of whether a DNA sample is collected or analyzed.
• The DNA surcharge is imposed and collected as part of the sentence in every criminal conviction on *342 the basis of the number of convictions, regardless of whether a DNA sample is collected or analyzed.[9]
• The DNA surcharge is imposed and collected as part of the sentence in every criminal conviction, regardless of whether the defendant has previously furnished a DNA sample.
¶ 68. The most significant factor in a court's determination that a statute's effects are not punitive is that the statute has a rational connection to a non-punitive purpose.[10] I shall therefore examine whether a rational connection exists between the terms of the statutory mandatory DNA surcharge and *343 the non-punitive purpose of the statute to fund state DNA programs. See majority op., ¶¶ 45-48.
¶ 69. Although the State and the majority opinion assert that a rational connection exists, their analyses fail. This analysis involves the factors set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169 (1963), especially the sixth and seventh factors that "must be considered in relation to the statute on its face." Hudson v. United States, 522 U.S. 93, 100-01 (1997).[11]
¶ 70. The sixth Mendoza-Martinez factor addresses whether the surcharge is rationally connected to some non-punitive purpose. The seventh Mendoza-Martinez factor addresses whether the surcharge "appears excessive in relation to the non-punitive purpose" of the statute. See majority op., ¶¶ 44-45.
¶ 71. The sixth and seventh Mendoza-Martinez factors, taken together, require courts to ask a two-part question: Is there a rational connection between the surcharge and the non-punitive purpose, and is the amount of the surcharge excessive in relation to the non-punitive activities the surcharge funds?[12] "If there is no rational connection and the fee is excessive in relation to the activities it is intended to fund, then the fee in effect serves as an additional criminal fine, that is, the fee is punitive." Radaj, 363 Wis. 2d 633, ¶ 25.
*344 ¶ 72. Looking to the sixth and seventh Mendoza-Martinez factors, it is evident that no rational and proportional connection exists between the mandatory, per-conviction DNA surcharge and its professed non-punitive purpose to fund the State's DNA program.
f 73. Radaj illustrates that there is no rational connection between the per-conviction, mandatory DNA surcharge and the funding of the State's DNA program. Radaj was convicted of four felonies committed prior to the effective date of the statutory mandatory DNA surcharge. Rather than use its discretion to impose a DNA surcharge if necessary, the circuit court was required by statute to order Radaj to pay the $250 surcharge for each felony, totaling $1,000. It could have been worse—Radaj was initially charged with 21 misdemeanors in addition to the four felonies; if Radaj had been convicted and sentenced for all 25 crimes, Radaj would have been ordered to pay $4,200 as a DNA surcharge.
f 74. The court of appeals upheld Radaj's ex post facto challenge to the statute and the accompanying surcharges. Characterizing the multiple surcharges as punishment, the court of appeals concluded that the sentence imposed was more burdensome on Radaj than the punishment that would have been imposed when Radaj committed the crimes (a single, permissive surcharge).
f 75. After the majority's decision in the instant case, Radaj, who was convicted of multiple crimes may not have to pay any DNA surcharge at all. Yet Scruggs, who was convicted of one crime, must pay a $250 DNA surcharge.
¶ 76. Is there any reason to treat Radaj and Scruggs differently? Both committed crimes before the effective date of the statutory mandatory DNA sur *345 charge. Radaj committed more crimes than Scruggs, yet his punishment (the DNA surcharge) may be less than hers. Does their different treatment run afoul of due process and equal protection, as well as ex post facto protections of the law?
¶ 77. I conclude that, on its face, the mandatory DNA surcharge statute does not bear a rational connection to funding the State's DNA program. The law calculates the DNA surcharge regardless of whether DNA was collected or analyzed, and calculates it on a per-conviction and felony /misdemeanor basis regardless of whether DNA was collected or analyzed. Accordingly, the DNA surcharge bears no relationship to the actual cost of the DNA-analysis-related activities that the surcharge is apparently intended to cover.
f 78. However rational a connection may be drawn between a statute imposing a single mandatory $250 DNA surcharge for a DNA sample actually collected and analyzed and funding the State's DNA programs, such a statute is not the statute challenged in this court on ex post facto grounds.
¶ 79. The DNA surcharge challenged in the instant case is imposed regardless of whether a DNA sample of the defendant is collected or analyzed; is calculated differently for misdemeanors and felonies (yet the cost of analysis of DNA samples in both types of crimes is the same); and is based on the number of convictions in a case. Consequently, the surcharge imposed by the statute challenged is not connected to—and is excessive in relation to—the regulatory purpose of funding state DNA programs.
¶ 80. As in Radaj, the remedy for the ex post facto violation in the instant case is to vacate the surcharge, and to remand the cause to the circuit court *346 to consider whether to impose a discretionary surcharge under the statute applicable at the time the crime was committed.
¶ 81. Before I conclude, I briefly discuss the obvious: The effect of the mandatory DNA surcharge statute should be evaluated in the context of a criminal justice system that exacts a serious toll on criminal defendants. Collateral consequences already burden many aspects of a defendant's daily life, such as limiting employment and housing options. Persons sentenced for a misdemeanor or felony in Wisconsin face up to 238 collateral consequences.[13] And, on top of this, criminal justice debt is stacking up for many defendants at a staggering rate. Collateral consequences and criminal justice debt appear to be leading criminal offenders into a downward spiral of debt and recidivism.[14]
*347 f 82. I thus urge the legislature and the Wisconsin Judicial Council to take notice of and consider the unintended consequences of the increasing statutory imposition of debt on criminal defendants and the increasing statutory collateral consequences. See Wis. Stat. § 13.92(2)(j).
f 83. For the reasons set forth, I dissent.

 Wisconsin Stat. § 973.046(lr) provides:
(lr) If a court imposes a sentence or places a person on probation, the court shall impose a deoxyribonucleic acid analysis surcharge, calculated as follows:
(a) For each conviction for a felony, $250.
(b) For each conviction for a misdemeanor, $200.

 See State v. Edwards, 2013 WI App 51, ¶ 7 n.2, 347 Wis. 2d 526, 830 N.W.2d 109 (quoting State v. Gibbons, 71 Wis. 2d 94, 97, 237 N.W.2d 33 (1976) ("[A] sentence is the means by which the court imposes a punishment or penalty provided by statute for the offense upon the person found guilty, as distinguished from probation, under which sentence is either withheld or its execution stayed.")).

 At least two circuit courts have vacated the mandatory DNA surcharge imposed on defendants who committed crimes before the effective date of the statutory mandatory DNA surcharge. See State v. Tharp, Milwaukee County Case Nos. 13-CF-2871 & 13-CF- 5173 (Cir. Ct. Oct. 9, 2014); State v. Vivar, Jefferson County Case No. 13-CT-367 (Cir. Ct. Sept. 9, 2014).

 The majority opinion suggests that a cross-reference to the DNA surcharge in Wis. Stat. § 814.76(5), which lists various surcharges in criminal actions, negates any inferences that could be drawn from the placement of the DNA surcharge in the criminal statutes. I disagree. In any event § 814.76(5) does not negate the fact that the DNA surcharge is, unlike other surcharges, part of the sentence.

 See Article I, Section 10 of the United States Constitution and Article I, Section 12 of the Wisconsin Constitution, prohibiting ex post facto laws.
"The animating principle underlying the ex post facto clauses is the concept of fair warning." State ex rel Singh v. Kemper, 2016 WI 67, ¶ 39, 371 Wis. 2d 127, 883 N.W.2d 86. See also Breck P. McAllister, Ex Post Facto Laws in the Supreme Court of the United States, 15 Cal. L. Rev. 269, 287 (1927) ("At the root of the mischief of ex post facto laws is their unfairness. The individual is entitled to a chance to know what the law is before he acts. The law must be accessible. It must not, like Caligula's, be written in small characters and hung upon high pillars.").

 I conclude that a punitive legislative intent can be shown, but it is easier to demonstrate that the mandatory DNA surcharge statute's effect is more burdensome punishment than the discretionary statute. Similar arguments support both punitive intent and punitive effect.
Compare People v. Stead, 845 P.2d 1156, 1160 (Colo. 1993) (resting its conclusion that a drug offender surcharge had a punitive intent in part on the ground that "[t]he surcharge at issue is part of Colorado's criminal code" and in part on "[t]he amount of the fine imposed is correlated to the degree of felony committed.") with In re DNA Ex Post Facto Issues, 561 F.3d 294, 299-300 (4th Cir. 2009) (resting its conclusion that a $250 DNA surcharge applied per defendant did not have a punitive intent because the surcharge's express purpose was "not punitive," it *341 was not codified in statutory chapter addressing "crime and punishment," it offset DNA expenses, and it was "relatively small [in] size.").

 See, e.g., Hudson v. United States, 522 U.S. 93, 100-01 (1997) (the seven Mendoza-Martinez factors "must be considered in relation to the statute on its face."); Weaver v. Graham, 450 U.S. 24, 29, 34 (1981) ("the inquiry [whether the criminal statute ameliorates or worsens conditions imposed by its predecessor] looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual"); Lindsey v. Washington, 301 U.S. 397, 401 (1937) ("[T]he ex post facto clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed. ... It is for this reason that an increase in the possible penalty is ex post facto regardless of the length of the sentence actually imposed, since the measure of punishment prescribed by the later statute is more severe than that of the earlier.") (citations omitted).
See also 6 Wayne R. LaFave et al., Criminal Procedure § 25.1(c) at 765-66 (4th ed. 2015).

 Two legislative decisions suggest a punitive intent: (1) tying the amount of the surcharge to the number of convictions (regardless of whether the defendant supplied only one DNA sample or several and regardless of whether the State analyzed one DNA sample or numerous samples); and (2) imposing a lesser DNA surcharge for misdemeanors than felonies. Cf. State v. Radaj, 2015 WI App 50, ¶ 21, 363 Wis. 2d 633, 866 N.W.2d 758 ("Wisconsin's DNA surcharge increases with each conviction.... [T]he legislative decision to tie the amount of the surcharge to the number of convictions, something seemingly unrelated to the cost of the DNA-analysis-related activities that the surcharge funds, casts doubt on legislative intent."); State v. Elward, 2015 WI App 51, ¶ 7, 363 Wis. 2d 628, 866 N.W.2d 756 ("When the circuit court sentenced Elward, the law required the surcharge, but did not permit the State to actually collect a DNA sample. As a result, the $200 surcharge bore no relation to the cost of a DNA test because he never had to submit to a test. The State received money for nothing. . . . [T]he surcharge . . . violated the Constitution's ex post facto clause.") (citation omitted).

 "The Act's rational connection to a nonpunitive purpose is a '[m]ost significant' factor in our determination that the statute's effects are not punitive." Smith v. Doe, 538 U.S. 84, 102 (2003) (quoting United States v. Ursery, 518 U.S. 267, 290 (1996)).

 See also Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169 (1963) ("[TJhese factors must be considered in relation to the statute on its face.").

 Specifically, we must consider "whether, under Wisconsin's statutory scheme, there is some rational connection between calculating the DNA surcharge on a per-conviction basis and the cost of the DNA-analysis-related activities that the surcharge is meant to cover." Radaj, 363 Wis. 2d 633, ¶ 29.

 See ABA Criminal Justice Section, National Inventory of the Collateral Consequences of Conviction, https://niccc.csg justicecenter.org/search/?jurisdiction=50 (last visited Feb. 9, 2017).

 See Alicia Bannon, Mitali Nagrecha, & Rebekah Diller, Brennan Center for Justice at New York University School of Law, Criminal Justice Debt: A Barrier to Reentry (2010), http://www.brennancenter.org/sites/default/files/legacy/Fees% 20and%20Fines%20FINAL.pdf
This report discusses the hardships on criminal defendants imposed by " 'user fees,' financial obligations imposed not for any traditional justice purpose ... but rather to fund tight state budgets." Id. at 1. User fees, "while often small in isolation," are so numerous in many jurisdictions (and becoming more numerous) that criminal defendants end up with extensive debt. This criminal justice debt tosses offenders into "an endless cycle of debt." Id. This debt creates a "significant barrier for individuals seeking to rebuild their lives after a criminal conviction." Id. at 2. The report addresses the concern that criminal justice debt leads to recidivism. Id. at 5.