State of Wisconsin, Plaintiff-Respondent,

v.

Tabitha A. Scruggs, Defendant-Appellant.†

Court of Appeals

*No. 2014AP2981–CR. Submitted on briefs September 9, 2015. —Decided October 21, 2015.*

**2015 WI App 88**

(Also reported in 872 N.W.2d 146.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dustin C. Haskell*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey J. Kassel*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. NEUBAUER, C.J. Tabitha A. Scruggs appeals from a judgment of conviction for burglary as a party to a crime, which imposed a $250 DNA surcharge pursuant to Wis. Stat. § 973.046(1r)(a) (2013–14),[1] and an order denying her motion for postconviction relief vacating the $250 DNA surcharge. At the time Scruggs committed the crime, the imposition of a $250 DNA surcharge for that offense was subject to the court's discretion; however, by the time she was convicted and sentenced, the legislature had made the $250 DNA surcharge mandatory for all felony convictions. Scruggs contends that, as applied to her, the manda-

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

tory imposition of the $250 DNA surcharge violates the ex post facto clauses of the United States and Wisconsin Constitutions. We disagree and, thus, affirm the judgment and order of the circuit court.

## BACKGROUND

¶ 2. The criminal complaint charged that on December 30, 2013, Scruggs committed one count of burglary as a party to a crime in violation of WIS. STAT. §§ 939.05, 943.10(1m)(a). She pleaded no contest to that offense on April 1, 2014, and was subsequently sentenced. As part of the sentence, the judgment ordered Scruggs to provide a DNA sample and pay a $250 DNA analysis surcharge.

¶ 3. Thereafter, Scruggs filed a postconviction motion seeking to vacate the $250 DNA surcharge, arguing that since WIS. STAT. § 973.046(1r)(a) (hereinafter the 2014 Amendment) did not take effect until January 1, 2014, two days after she committed the crime, the change in the DNA surcharge from discretionary to mandatory could not be assessed against her without running afoul of the constitutional protections against ex post facto laws. U.S. CONST. art. I, § 10; WIS. CONST. art. I, § 12. Instead, Scruggs argued, the circuit court should have applied WIS. STAT. § 973.046 as it existed at the time she committed the offense, which left the imposition of a DNA surcharge to the discretion of the court. *State v . Cherry*, 2008 WI App 80, ¶ 5, 312 Wis. 2d 203, 752 N.W.2d 393.

¶ 4. The circuit court concluded that it was required to impose the $250 DNA surcharge under the 2014 Amendment. The court reasoned that because the 2014 Amendment was enacted on June 30, 2013, and published on July 1, 2013, it was "in effect" when she

committed the crime, even though the enabling legislation provided that it was effective on the first day of the sixth month following publication or January 1, 2014. 2013 Wis. Act 20, § 9426(1)(am).

## DISCUSSION

### *Standard of Review*

¶ 5. The State concedes that the circuit court erred when it held that the 2014 Amendment was in effect when Scruggs committed the crime. The State maintains, however, that the 2014 Amendment as applied to Scruggs is not punitive and, thus, there is no violation of the ex post facto clauses of the U.S. and Wisconsin Constitutions.

██ ¶ 6. Whether a statute violates the ex post facto clauses of the U.S. and Wisconsin Constitutions is a question of law that this court reviews de novo. *State v. Elward*, 2015 WI App 51, ¶ 5, 363 Wis. 2d 628, 866 N.W.2d 756. It is the defendant's burden to establish a violation of the ex post facto clauses of the U.S. and Wisconsin Constitutions beyond a reasonable doubt. *Appling v. Walker*, 2014 WI 96, ¶ 17 n.21, 358 Wis. 2d 132, 853 N.W.2d 888; *Elward*, 363 Wis. 2d 628, ¶ 5.

### *The Mandatory DNA Surcharge Is Not Unconstitutional As Applied to Scruggs*

 ¶ 7. Wisconsin courts have generally taken guidance from the U.S. Supreme Court's interpretation of the Ex Post Facto Clause contained in the U.S. Constitution. *State v. Hull*, 2015 WI App 46, ¶ 21 n.5, 363

Wis. 2d 603, 867 N.W.2d 419. One type of ex post facto law is one " 'which makes more burdensome the punishment for a crime . . . .' " *State v. Thiel*, 188 Wis. 2d 695, 700, 524 N.W.2d 641 (1994) (quoting *Collins v. Youngblood*, 497 U.S. 37, 42 (1990)). As such, the "statute must be criminal rather than civil in nature." *State v. Rachel*, 2002 WI 81, ¶ 22, 254 Wis. 2d 215, 647 N.W.2d 762. In order to make that determination, a court will use the "intent-effects" test. *Id.*, ¶¶ 22, 31. First, the intent of the legislature in creating the law will be examined to determine whether it either expressly or impliedly indicated a preference that the statute in question be considered civil or criminal. *City of S. Milwaukee v. Kester*, 2013 WI App 50, ¶¶ 22–23, 347 Wis. 2d 334, 830 N.W.2d 710; *Rachel*, 254 Wis. 2d 215, ¶ 32. If a court concludes that the legislature's intent was to punish, the law is considered punitive and the inquiry ends there. *City of S. Milwaukee*, 347 Wis. 2d 334, ¶ 22. If, however, the legislature's intent was to impose a civil and nonpunitive regulatory scheme, a court must next determine whether the sanctions imposed by the law are so punitive either in purpose or effect so as to transform what was clearly intended as a civil remedy into a criminal penalty. *Id.*; *Rachel*, 254 Wis. 2d 215, ¶ 33. Only the "clearest proof" will convince a court "that what a legislative body has labeled a civil remedy is, in effect, a criminal penalty." *City of S. Milwaukee*, 347 Wis. 2d 334, ¶ 22.

¶ 8. Since Scruggs has brought an "as-applied" challenge to the 2014 Amendment, we must "assess the merits of the challenge by considering the facts of the particular case in front of us, 'not hypothetical facts in other situations' " and determine whether her "constitutional rights were actually violated." *Society Ins. v.*

*LIRC*, 2010 WI 68, ¶ 27 n.9, 326 Wis. 2d 444, 786 N.W.2d 385 (citation omitted).

¶ 9. Preliminarily, we note that our court recently held, in an "as-applied" challenge, the 2014 Amendment was an ex post facto law violation when the $250 surcharge was imposed for each of *multiple* felony convictions. *State v. Radaj*, 2015 WI App 50, ¶¶ 21, 37, 363 Wis. 2d 633, 866 N.W.2d 758. There, the defendant was convicted of four felonies and assessed a $1000 DNA surcharge or $250 for each conviction. *Id.*, ¶ 1. The court assumed without deciding that the legislature's intent behind the 2014 Amendment was nonpunitive. *Id.*, ¶ 16. However, it concluded that the effect of assessing a $250 DNA surcharge for each felony conviction was to punish a defendant, holding that there could be no reason why the costs associated with running the DNA data bank would generally increase in proportion to the number of convictions. *Id.*, ¶¶ 32, 35. The court left for another day the issue presented in this case. Indeed, the court stressed that it was "not weigh[ing] in on whether the result might be different if Radaj had been convicted of a single felony carrying with it a mandatory $250 surcharge." *Id.*, ¶ 36. Therefore, since this appeal involves only a single felony conviction, *Radaj* does not control our decision.

¶ 10. Turning to the statute and its history, we conclude that the legislature was motivated by a desire to expand the State's DNA data bank and to offset the cost of that expansion, rather than a punitive intent. Prior to the 2014 Amendment, under WIS. STAT. § 973.046(1g), outside certain specified felony violations, a court had the discretion to order a DNA analysis surcharge of $250 on a person convicted of a

felony. But with the 2014 Amendment, a $250 DNA surcharge from those convicted of a felony became mandatory. Sec. 973.046(1r)(a). The 2014 Amendment was part of a larger initiative by the State to expand the collection of DNA samples. *See* 2013 Wis. Act 20, §§ 2354, 2355, 2356; PAUL ONSAGER, WISCONSIN LEGISLA-TIVE FISCAL BUREAU, Paper #410, DNA COLLECTION AT ARREST AND THE DNA ANALYSIS SURCHARGE 2–8 (May 23, 2013) (hereinafter LFB #410). Since its introduction into the courtroom, DNA evidence has been a powerful tool in not only identifying criminal perpetrators but also in exonerating innocent persons, and the 2014 Amendment reflects the State's desire to facilitate those purposes through a larger pool of DNA specimens. *See* LFB #410 at 8.

¶ 11. In order to offset the increased burden on the Department of Justice (DOJ) in collecting, analyzing, and maintaining the additional DNA samples, the legislature imposed the $250 surcharge on felony convictions to be deposited with the DOJ to pay for operating its DNA data bank. *See* WIS. STAT. §§ 165.77, 973.046(3); LFB #410 at 2–3. Specifically, "[a]ll moneys collected from deoxyribonucleic acid analysis surcharges shall be deposited by the secretary of administration as specified in s. 20.455(2)(Lm) and utilized under s. 165.77." Sec. 973.046(3). Section 165.77, in turn, is the DNA analysis and data bank statute.

¶ 12. In addition to the initial collection of defendants' DNA specimens, the creation of DNA profiles and their entry into the data bank, WIS. STAT. § 165.77 requires DOJ to analyze DNA when requested by law enforcement agencies regarding an investigation; upon request by a defense attorney, pursuant to a court order, regarding his or her client's specimen; and, subject to DOJ rules, at the request of an individual

regarding his or her own specimen. Sec. 165.77(2)(a)1. DOJ may compare the data obtained from a specimen with data obtained from other specimens and provide those results to prosecutors, defense attorneys, or the subject of the data. Sec. 165.77(2)(a)2. DOJ is required to maintain a data bank based on data obtained from its analysis of DNA specimens. Sec. 165.77(3). That the DNA surcharge is specifically dedicated to fund the collection and analysis of DNA samples and the storage of DNA profiles—all regulatory activities— evidences a nonpunitive cost-recovery intent.

¶ 13. The relatively small size of the surcharge also indicates that the fee applied here was not intended to be a punishment, but rather an administrative charge to pay for the collection of the sample from Scruggs, along with the expenditures needed to administer the DNA data bank. Scruggs has made no showing to the contrary. And, the $250 DNA surcharge is consistent with the fee charged in other jurisdictions. *See* 730 ILL. COMP. STAT. 5/5–4-3(j) (2015) ($250); KAN. STAT. ANN. § 75–724 (2015) ($200); S.C. CODE ANN. § 23-3-670 (2015) ($250); WASH. REV. CODE ANN. § 43.43.7541 (2015) ($100). As we noted in *Radaj*, "we must give the legislature broad leeway to select a surcharge amount." *Radaj*, 363 Wis. 2d 633, ¶ 30. The connection between the fee and the costs it is intended to cover "need not be perfect to be rational." *Id* .

¶ 14. Scruggs contends that the $250 DNA surcharge for a felony conviction reflects a punitive intent because the surcharge is higher than the $200 surcharge for a misdemeanor conviction, and is imposed regardless of whether she provided a sample in the past. She contends the lack of a "connection" between imposition of the surcharge and whether the defendant created any DNA cost, evidences a punitive intent.

However, this is an "as applied" challenge, and as to Scruggs's single felony conviction, the $250 surcharge does not evidence a punitive intent. Moreover, Scruggs has pointed to nothing, other than speculation, that the disparity between the surcharges on a conviction for a felony as compared to a misdemeanor reflects that the legislature was motivated by a punitive intent. In any event, the legislature might have reasoned that because DNA evidence is more often used in prosecuting felony cases and, in turn, in subsequent law enforcement investigations, that those offenders should bear more of the cost of operating the DNA data bank. Additionally, even before the 2014 Amendment, when the imposition of a DNA surcharge for a felony conviction was left to the discretion of the sentencing court, the surcharge was still $250. Since there has been no change in the amount of the DNA surcharge on a felony conviction, it cannot be said the same surcharge now reflects that the legislature was motivated by a punitive intent.

¶ 15. We also find persuasive the reasoning of courts in other jurisdictions finding no ex post facto violation for similar surcharges applied for similar purposes. For example, in *Eubanks v. South Carolina Dep't of Corrs. (In re DNA Ex Post Facto Issues)*, 561 F.3d 294 (4th Cir. 2009), an inmate challenged on ex post facto grounds a South Carolina statute requiring him to provide a DNA sample for the state's DNA database and pay a $250 processing fee. *Id.* at 297. The Fourth Circuit concluded that the fee did not constitute an ex post facto violation, pointing out that the legislature expressly provided that the funds generated by the fees would be credited to the state law enforcement division to offset the expenses that division incurred in carrying out the law. *Id.* at 300. In

addition, "the relatively small size of the fee . . . indicate[d] that it was not intended to have a significant retributive or deterrent value," while "the 'structure and design' of the statute demonstrate[d] that the fee was intended to be an administrative charge to pay for the substantial expenditures that would be needed to implement, operate, and maintain the DNA database." *Id.*

¶ 16. In *State v. Brewster*, 218 P.3d 249, 250–51 (Wash. Ct. App. 2009), the court concluded that the $100 fee, which was discretionary when the defendant committed her crime but mandatory when she was convicted, was not punitive. The legislature's purpose in amending the law was to fund the collection of samples and the maintenance and operation of DNA databases, which, the legislature had repeatedly found, were important tools in criminal investigations in excluding individuals who are the subject of investigations or prosecutions, in detecting recidivist acts, and in identifying missing persons and unidentified human remains. *Id.* at 251; *Commonwealth v. Derk*, 895 A.2d 622, 627 (Pa. Super. Ct. 2006) (Pennsylvania legislature did not intend to punish when it enacted law requiring certain defendants to submit DNA sample and pay mandatory fee of $250 because the intent of the law was "to promote public safety and more effective law enforcement"); *see also Mueller v. Raemisch*, 740 F.3d 1128, 1135 (7th Cir. 2014) ($100 annual registration fee imposed on sex offenders convicted in Wisconsin did not violate prohibition against ex post facto laws because the fee was intended to compensate the state for the expense of maintaining the sex offender registry).

¶ 17. Finally, our conclusion that the statute evidences a nonpunitive cost-recovery intent is bol-

stered by its language expressly denominating the fee assessed against felony offenders such as Scruggs as a "surcharge," a civil nonpunitive label, rather than as a "fine" or "penalty." *See Radaj*, 363 Wis. 2d 633, ¶ 17; *Rachel*, 254 Wis. 2d 215, ¶ 41. While not dispositive, "[w]e give 'great deference' to such labels." *Radaj*, 363 Wis. 2d 633, ¶ 17 (citation omitted).

¶ 18. Scruggs has failed to carry her burden showing beyond a reasonable doubt that the legislature intended to punish her. Nor has Scruggs carried her burden of showing that the effect of the $250 DNA surcharge is to impose a criminal penalty. For support, Scruggs relies on many of the same arguments as demonstrative of the punitive effect of the $250 DNA surcharge, which we have already rejected as lacking in merit.[2]

## CONCLUSION

¶ 19. Scruggs has failed to demonstrate beyond a reasonable doubt that the $250 DNA surcharge that the circuit court imposed on her for a single felony conviction constitutes a punishment and, thus, violates the prohibitions against ex post facto laws in the

[2] In a prior order, we asked the parties to address how the State's position seeking the imposition of a single mandatory surcharge comported with its concession in *State v. Radaj*, 2015 WI App 50, ¶ 38, 363 Wis. 2d 633, 866 N.W.2d 758, that the appropriate remedy for the ex post facto violation in that case was to remand the matter to the circuit court to exercise its discretion to determine whether a $250 DNA surcharge should be imposed. However, since Scruggs has not established that the $250 DNA surcharge is a criminal penalty, we need not consider what might be an appropriate remedy. Indeed, Scruggs concedes that the State's position in this case that there is no ex post facto violation is not inconsistent with the position it took in *Radaj*.

U.S. and Wisconsin Constitutions. Accordingly, we affirm the denial of Scruggs' postconviction motion to vacate the $250 DNA surcharge, albeit on different grounds than those stated by the circuit court.

*By the Court.*—Judgment and order affirmed.