STATE of Wisconsin, Plaintiff-Respondent,

v.

Gavin S. HILL, Defendant-Appellant.

Court of Appeals

*No. 2015AP374–CR. Submitted on briefs December 15, 2015.—Decided March 1, 2016.*

2016 WI App 29

(Also reported in 878 N.W.2d 709.)

244

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Sara Kelton Brelie,* assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Sara Lynn Schaeffer,* assistant attorney general, and *Brad D. Schimel,* attorney general.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. STARK, P.J.   Gavin Hill appeals a judgment convicting him of disorderly conduct—domestic abuse, as a repeater and a domestic abuse repeater, and an order denying his motion for postconviction relief. Hill raises two arguments on appeal. First, he argues the record in this case does not support the application of the domestic abuse repeater enhancer. Second, he argues that, as applied to him, the mandatory imposition of a $250 DNA surcharge, pursuant to WIS. STAT.

§ 973.046(1r)(a),[1] violates the ex post facto clauses of the United States and Wisconsin Constitutions. We reject these arguments and affirm.

## BACKGROUND

¶ 2. On July 19, 2013, Hill was charged with two counts: disorderly conduct—domestic abuse, as a repeater and a domestic abuse repeater; and criminal damage to property, as a repeater. A person qualifies as a repeater if he or she "was convicted of a felony during the 5–year period immediately preceding the commission of the crime for which the actor presently is being sentenced, or if the actor was convicted of a misdemeanor on 3 separate occasions during that same period, which convictions remain of record and unreversed." Wis. Stat. § 939.62(2). As relevant to this case, a person qualifies as a domestic abuse repeater if he or she

> was convicted, on 2 separate occasions, of a felony or a misdemeanor for which a court imposed a domestic abuse surcharge under s. 973.055(1) or waived a domestic abuse surcharge pursuant to s. 973.055(4), during the 10–year period immediately prior to the commission of the crime for which the person presently is being sentenced, if the convictions remain of record and unreversed.

Wis. Stat. § 939.621(1)(b).[2] Both the ordinary repeater and domestic abuse repeater enhancers permit an

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] Wisconsin Stat. § 973.055(1) provides that a circuit court "shall" impose a domestic abuse surcharge if a person is convicted of certain listed offenses and "[t]he court finds that the conduct constituting the violation . . . involved an act by the adult person against his or her spouse or former spouse,

increase in the defendant's maximum term of imprisonment. *See* §§ 939.62(1), 939.621(2). In addition, the domestic abuse repeater enhancer "changes the status of a misdemeanor to a felony." Sec. 939.621(2).

¶ 3. Regarding the ordinary repeater enhancer, the complaint alleged Hill had been convicted of three misdemeanors within the previous five years in Shawano County case Nos. 2011CM454 and 2009CM1195, and Brown County case No. 2008CT1859. Regarding the domestic abuse repeater enhancer, the complaint alleged Hill had been convicted on two separate occasions during the previous ten years of offenses for which a court either imposed or waived a domestic abuse surcharge. The complaint did not specify which prior offenses the State believed met that standard. However, attached to the complaint were CCAP[3] reports regarding five cases—the three specifically mentioned in the complaint as applying to the ordinary repeater enhancer and two others. Four of the CCAP reports reflected that Hill had been convicted of offenses with the domestic abuse modifier. *See* WIS. STAT. § 968.075(1)(a).

---

against an adult with whom the adult person resides or formerly resided or against an adult with whom the adult person has created a child." Subsection (4) provides for waiver of the surcharge in cases where the court finds imposing it would have a negative impact on the offender's family.

[3] CCAP, which stands for Consolidated Court Automation Programs, is "a case management system provided by Wisconsin Circuit Court Access program (WCCA). It provides public access online to reports of activity in Wisconsin circuit courts for those counties that use CCAP." *State v. Bonds*, 2006 WI 83, ¶ 6, 292 Wis. 2d 344, 717 N.W.2d 133.

¶ 4. An Information was filed on August 22, 2013. It contained the same allegations regarding the repeater and domestic abuse repeater enhancers as the complaint, but did not include any attachments.

¶ 5. On April 9, 2014, Hill pled no contest to the disorderly conduct charge, as set forth in the Information. There was no negotiated plea agreement, and both sides were free to argue at sentencing.[4] The circuit court accepted Hill's plea and ordered a presentence investigation (PSI), which recommended a four-year sentence, consisting of thirty months' initial confinement and eighteen months' extended supervision.[5] Hill submitted an alternative PSI, which recommended an imposed and stayed sentence of eighteen months' initial confinement and eighteen months' extended supervision, with three years' probation and six months' conditional jail time. The circuit court ultimately sentenced Hill to two years' initial confinement and fifteen months' extended supervision. It also ordered him to pay a $250 DNA surcharge, pursuant to WIS. STAT. § 973.046(1r)(a).

¶ 6. Hill moved for postconviction relief, asking the circuit court to vacate the domestic abuse repeater enhancer and commute his sentence to the maximum

---

[4] At the time of his plea, Hill intended to go to trial on the criminal damage to property charge. However, that count was ultimately dismissed and read in.

[5] The four-year sentence recommended by the PSI would not have been possible unless both the repeater and domestic abuse repeater enhancers applied. The maximum sentence for disorderly conduct is ninety days. See WIS. STAT. §§ 947.01(1), 939.51(3)(b). The repeater enhancer increases a maximum term of imprisonment of one year or less to not more than two years. See WIS. STAT. § 939.62(1)(a). The domestic abuse repeater enhancer increases the maximum term of imprisonment by not more than two years. See WIS. STAT. § 939.621(2).

allowed by law without that enhancer. He argued the State had failed to prove, and he had not admitted, that he was convicted of two offenses within the previous ten years for which a court imposed or waived a domestic abuse surcharge. Hill also asked the court to vacate the DNA surcharge, arguing WIS. STAT. § 973.046(1r)(a), which made the imposition of a DNA surcharge mandatory for every felony conviction, was an unconstitutional ex post facto law as applied to him. The circuit court denied Hill's postconviction motion, and this appeal follows.

## DISCUSSION

### I. Domestic abuse repeater enhancer

■

¶ 7. On appeal, Hill renews his argument that the record does not support application of the domestic abuse repeater enhancer. "When we review the application of a statute to a set of facts to determine whether a penalty enhancer is valid, we are presented with a question of law that we review independently . . . ." *State v. Bonds*, 2006 WI 83, ¶ 12, 292 Wis. 2d 344, 717 N.W.2d 133.

¶ 8. WISCONSIN STAT. § 973.12(1) sets forth the statutory requirements for alleging and applying the ordinary repeater enhancer. *See Bonds*, 292 Wis. 2d 344, ¶ 14. Under the statute, qualifying prior convictions must either be admitted by the defendant or proved by the State beyond a reasonable doubt. *See* § 973.12(1); *State v. Kashney*, 2008 WI App 164, ¶ 8, 314 Wis. 2d 623, 761 N.W.2d 672.

■

¶ 9. We agree with the parties that this standard also applies to the domestic abuse repeater enhancer.

The text of Wis. Stat. § 973.12(1) refers only to Wis. Stat. § 939.62, the statute governing the ordinary repeater enhancer. However, we have previously held, based on "due process concerns," that the proof requirements of § 973.12(1) apply to the enhanced penalty provisions of the Uniform Controlled Substance Act. *See State v. Coolidge*, 173 Wis. 2d 783, 792–93, 496 N.W.2d 701 (Ct. App. 1993), *abrogated on other grounds by State v. Tiepelman*, 2006 WI 66, ¶ 31, 291 Wis. 2d 179, 717 N.W.2d 1. Conversely, our supreme court has concluded the proof requirements of § 973.12(1) do not apply when the State attempts to prove prior OWI convictions for sentence enhancement purposes under Wis. Stat. § 346.65(2). *See State v. Wideman*, 206 Wis. 2d 91, 94–95, 556 N.W.2d 737 (1996). In reaching that conclusion, the *Wideman* court relied in large part on the fact that Wis. Stat. § 939.62(3)(a), which defines the term "repeater" for purposes of § 973.12(1), expressly excludes "motor vehicle offenses under chs. 341 to 349" from the definition of a repeater. *Wideman*, 206 Wis. 2d at 100; *see also State v. Spaeth*, 206 Wis. 2d 135, 146–47, 556 N.W.2d 728 (1996) (applying same reasoning as in *Wideman* to conclude § 973.12(1) does not apply to proving prior OAR convictions under Wis. Stat. § 343.44(2)).

¶ 10. Unlike OWI and OAR convictions, the prior convictions that are considered for purposes of the domestic abuse repeater enhancer are not explicitly excluded from consideration under the ordinary repeater statute. In addition, as in *Coolidge*, due process concerns support applying the proof requirements of Wis. Stat. § 973.12(1) to domestic abuse repeater allegations. We therefore agree with the parties that the proof requirements of § 973.12(1) apply in this case.

¶ 11. Accordingly, for the domestic abuse repeater enhancer to apply, the State had to prove beyond a reasonable doubt, or Hill had to personally admit, that he was convicted on two separate occasions within the ten-year period immediately prior to the commission of his disorderly conduct of an offense for which a court either imposed a domestic abuse surcharge under WIS. STAT. § 973.055(1) or waived a domestic abuse surcharge under § 973.055(4). *See* WIS. STAT. § 939.621(1)(b). On supplemental briefing, the State conceded it did not prove Hill's domestic abuse repeater status, and we agree with that concession.[6]

[6] WISCONSIN STAT. § 973.12(1) provides, in relevant part, that "[a]n official report of the F.B.I. or any other governmental agency of the United States or of this or any other state shall be prima facie evidence of any conviction or sentence therein reported." The State properly conceded in its respondent's brief that the CCAP reports attached to the complaint did not constitute prima facie evidence that Hill met the statutory definition of a domestic abuse repeater. It is well established that CCAP reports do not qualify as official reports for purposes of § 973.12(1). *Bonds*, 292 Wis. 2d 344, ¶¶ 48–49.

The State also conceded, on supplemental briefing, that the PSI did not constitute prima facie evidence of Hill's domestic abuse repeater status. A PSI can, under certain circumstances, constitute prima facie evidence of previous convictions for purposes of the ordinary repeater enhancer. *See State v. Caldwell*, 154 Wis. 2d 683, 693–95, 454 N.W.2d 13 (Ct. App. 1990). For instance, in *Caldwell*, we determined the PSI provided prima facie evidence of the defendant's prior conviction because "[t]he repeater allegation was expressly contemplated by the investigating probation and parole agent[,]" "[t]he date of the relevant prior conviction [was] included in the report[,]" and the report "contain[ed] numerous indications that the agent independently verified the prior conviction from sources other than the complaint." *Id.* at 694.

Unlike the ordinary repeater enhancer, for purposes of the domestic abuse repeater enhancer, the State must do more

The operative issue is therefore whether Hill personally admitted the existence of qualifying prior convictions for purposes of the domestic abuse repeater enhancer.

■

¶ 12.  To date, no case has discussed what suffices as an admission that a defendant qualifies as a domestic abuse repeater under Wis. Stat. § 939.621(1)(b). However, cases interpreting the ordinary repeater statute are instructive on this point. For instance, we know that, under the ordinary repeater statute, an admission that the defendant qualifies as a repeater may not "be inferred nor made by defendant's attorney, but rather, must be a direct and specific admission by the defendant." *State v. Farr*, 119 Wis. 2d 651, 659, 350 N.W.2d 640 (1984). We also know that it is not enough for the defendant merely to admit he or she is a "repeater," because that is a legal term. *State v. Watson*, 2002 WI App 247, ¶ 5, 257 Wis. 2d 679, 653 N.W.2d 520 (citing Wis. Stat. § 973.12(1)).

than prove the fact of prior convictions and that they occurred within the time frame set forth in the statute. It must also prove that the prior convictions involved either imposition or waiver of a domestic abuse surcharge. *See* Wis. Stat. § 939.621(1)(b). Here, the PSI merely labeled three of Hill's prior convictions as "domestic abuse," without further explanation. It did not specify whether a domestic abuse surcharge was imposed or waived in those cases. Given that a PSI "must contain relevant information regarding the issue of repeater status," *Caldwell*, 154 Wis. 2d at 693–94 (quoting *State v. Farr*, 119 Wis. 2d 651, 658, 350 N.W.2d 640 (1984)), the PSI's lack of information about the domestic abuse surcharge renders it insufficient to establish Hill's status as a domestic abuse repeater.

¶ 13.  Cases applying the ordinary repeater enhancer also instruct, however, that a defendant's plea to a charge containing the repeater enhancer may constitute an admission to the prior convictions necessary to apply that enhancer. *See State v. Liebnitz*, 231 Wis. 2d 272, 603 N.W.2d 208 (1999); *State v. Rachwal*, 159 Wis. 2d 494, 465 N.W.2d 490 (1991). In *Rachwal*, for instance, the defendant pled no contest to a misdemeanor charge that included an allegation he was a repeater. *Rachwal*, 159 Wis. 2d at 500–01. The complaint specifically alleged the defendant had been convicted of four misdemeanor charges within the five-year period immediately preceding the commission of the charged offense, and it included the dates of the prior convictions and the nature of the offenses. *Id.* During the plea colloquy, the defendant did not specifically acknowledge the prior convictions, nor did the circuit court ask whether they remained of record and unreversed. *Id.* at 504. However, the court expressly drew the defendant's attention to the repeater provision of the complaint and advised the defendant of the increased penalty he faced as a result of the repeater enhancer. *Id.* at 502–03. The defendant affirmed he understood the consequences of entering a plea to a charge containing the repeater enhancer. *Id.*

¶ 14.  On this record, our supreme court concluded the defendant's no contest plea constituted an admission to the prior convictions listed in the complaint. *Id.* at 512. The court rejected the defendant's argument that he did not directly and specifically admit the prior convictions, as required by *Farr*, stating:

> The admission in this case was an affirmative one. It was direct and specific, as called for by *Farr*. The trial judge expressly drew the defendant's attention to the

253

repeater nature of the charge and to the fact that the possible penalties the defendant was facing might be enhanced, pursuant to the repeater statute, as a result of the defendant's being found guilty pursuant to his no contest plea. After informing the defendant of his constitutional rights and repeatedly questioning him so as to ascertain that he was submitting his plea freely, voluntarily and intelligently, the trial judge accepted the defendant's unequivocal affirmative answer as to his understanding of his situation. In this light, the colloquy into the defendant's understanding of the meaning of the allegations he was facing can be said to have produced a direct and specific admission.

*Id.* at 509.

¶ 15. The court then cited the general rule in other jurisdictions that "what is admitted by a guilty or no contest plea is all the material facts alleged in the charging document." *Id.* Finally, the court stated the defendant's position was "incredible insofar as it argues that he had reason to expect that despite his no contest plea, the state was still required to prove the existence of the prior convictions before he could be sentenced as a repeater." *Id.* at 511. The court explained:

Clearly, the defendant knew his plea would constitute an admission of his prior convictions. The defendant was fully and expressly informed that his no contest plea would subject him to the penalties to which his prior convictions and consequent repeater status rendered him liable. The judge stated to him explicitly that he was subject to sentencing as a repeater upon a finding of guilty. The judge inquired as to the defendant's understanding of the situation. The record shows that the defendant was fully aware of the potential consequences of pleading no contest. He nevertheless chose to enter a no contest plea. He did so freely, voluntarily and intelligently. Presumably, he

254

did so because he honestly knew the allegations as to his priorconvictions to be true and because he considered it futile to require proof by the prosecution.

*Id.*

¶ 16. In *Liebnitz*, the complaint charged the defendant with five counts, each as a repeater. *Liebnitz*, 231 Wis. 2d at 276. Each repeater allegation "set forth the facts supporting its application to [the defendant]," and the defendant did "not challenge the accuracy or specificity of the repeater provisions detailed within the complaint." *Id.* At the initial appearance, the circuit court read each of the charges aloud, including the repeater allegations. *Id.* at 276–80. With respect to each charge, the court confirmed the defendant understood the penalty increase occasioned by the repeater enhancer. *Id.* at 277–80. An Information was later filed containing the same charges and repeater allegations as the complaint. *Id.* at 280.

¶ 17. The defendant ultimately pled no contest to each of the five counts in the Information. *Id.* at 280–81. During the plea colloquy, the court ascertained that the defendant understood the nature of the charges and had read and understood the Request to Enter a Plea and Waiver of Rights form. *Id.* at 281. The court asked the defendant, "[I]s it correct that by your pleas you've chosen not to contest the allegations contained in the complaint that was provided to you when you first appeared in court?" *Id.* at 282. The defendant answered in the affirmative. *Id.* However, the court did not advise the defendant of the maximum penalties he would be facing by entering his pleas or directly ask the defendant whether he had been convicted of the crimes set forth in the repeater provisions of the charging documents. *Id.* at 282, 284.

¶ 18. On these facts, our supreme court concluded the defendant's no contest pleas constituted admissions of the prior offenses alleged in the charging documents because the "totality of the record" established the defendant was "fully aware of the repeater charge[s] and [their] consequences" when entering his pleas. *Id.* at 285, 288. The court cited four factors in support of this conclusion.

¶ 19. First, the court noted that both the complaint and Information charged the defendant as a repeater on all counts and set forth in detail the nature of his previous convictions, the dates of conviction, the number of years added to the underlying charges as a result of his repeater status, and the maximum possible term of imprisonment for each count with the repeater enhancer applied. *Id.* at 285–86. Second, the court observed the circuit court read each count of the complaint to the defendant during the initial appearance, including the repeater allegations, and the defendant confirmed he understood the possible penalty enhancement. *Id.* at 286. Third, the court noted the defendant had completed a Request to Enter a Plea and Waiver of Rights form, on which he specifically acknowledged "that a factual basis for [his] plea of no contest [was] established by the criminal complaint and transcript of preliminary exam . . . ." *Id.* Fourth, the court observed the defendant confirmed during the plea colloquy that he had chosen not to contest the allegations in the complaint. *Id.* Citing *Rachwal*, the court stated it is "a well-established rule" that a guilty or no contest plea admits all the material facts alleged in the charging documents. *Liebnitz*, 231 Wis. 2d at 286–87. The court concluded, "In this case the criminal complaint clearly set forth the repeater charge attached to each count filed against [the defendant], and

[the defendant] specifically stated on the record that he would not contest any allegation in the complaint." *Id.* at 287.

■

¶ 20. As in *Liebnitz*, the "totality of the record" in this case demonstrates that Hill was "fully aware" of the domestic abuse repeater allegation and its consequences when he entered his no contest plea to the disorderly conduct charge. *See id.* at 285, 288. Both the complaint and Information alleged Hill had committed that offense as a domestic abuse repeater. In particular, both documents parroted the language of Wɪs. Sᴛᴀᴛ. § 939.621(1)(b), alleging Hill had "been convicted on 2 separate occasions of a felony or misdemeanor for which a court imposed a domestic abuse surcharge under sec. 973.055(1) Wis. Stats. or waived a domestic abuse surcharge pursuant to sec. 973.055(4) Wis. Stats., during the ten year period immediately preceding the commission of this offense[.]"

¶ 21. Neither the complaint nor the Information specified which prior convictions the State was relying on to support its allegation that Hill was a domestic abuse repeater. However, that deficiency was remedied by the CCAP records attached to the complaint. Although CCAP records do not constitute prima facie proof of prior convictions for purposes of Wɪs. Sᴛᴀᴛ. § 973.12(1), *see Bonds*, 292 Wis. 2d 344, ¶ 49, nothing prevents us from relying on those records to determine whether Hill understood the domestic abuse repeater allegation in the charging documents and therefore admitted, by virtue of his no contest plea, that he qualified as a domestic abuse repeater. Here, when the allegations in the charging documents are read together with the CCAP reports, the convictions on

which the State was relying to support the domestic abuse repeater enhancer become sufficiently clear.

¶ 22. The CCAP reports attached to the complaint pertain to five prior cases. Three of those cases —Shawano County case Nos. 2011CM454 and 2009CM1195, and Brown County case No. 2008CT1859—are specifically referenced in the charging documents as satisfying the ordinary repeater allegation. This leaves only two other cases in the attached CCAP records—Brown County case No. 2011CM602 and Shawano County case No. 2012CF120. The CCAP records for those cases state the dates of the convictions and list "charge modifiers" of "[Wis. Stat. §] 968.075(1)(a) Domestic Abuse." Just as the allegations in the charging documents regarding the domestic abuse repeater enhancer precede the allegations regarding the ordinary repeater enhancer, the CCAP records pertaining to Brown County case No. 2011CM602 and Shawano County case No. 2012CF120 precede the CCAP records pertaining to the cases specifically alleged in support of the ordinary repeater enhancer. Under these circumstances, the charging documents fairly apprised Hill of the cases on which the State was relying to support the domestic abuse repeater enhancer, even though those cases were not expressly identified in the body of the complaint or in the Information.[7]

---

[7] When two penalty enhancers are applied to a particular charge, as was the case with Hill's disorderly conduct charge, different prior convictions must be used to support each penalty enhancer. *See State v. Delaney*, 2003 WI 9, ¶¶ 31–32, 259 Wis. 2d 77, 658 N.W.2d 416. Given that the three cases expressly relied on for the ordinary repeater enhancer could not, as a matter of law, also be used to establish the domestic abuse repeater enhancer, the State necessarily needed to rely

¶ 23. The circumstances surrounding Hill's no contest plea further support our conclusion that the plea constitutes an admission of the domestic abuse repeater allegation in the charging documents. Before the plea hearing, Hill signed a Plea Questionnaire/ Waiver of Rights form, which contained handwritten notations indicating the disorderly conduct was committed as both an ordinary repeater and a domestic abuse repeater.

¶ 24. Then, during the plea hearing, the circuit court methodically explained the allegations in the Information pertaining to the disorderly conduct

on the other two cases included in the CCAP reports to support the domestic abuse repeater enhancer. Although there is no evidence in the record that Hill was aware of this legal principle at the time he entered his no contest plea, the interplay between the allegations in the complaint and the attached CCAP reports nevertheless convinces us Hill understood the cases on which the State was relying to support the domestic abuse repeater enhancer.

We also acknowledge that the CCAP reports simply indicate the "Domestic Abuse" modifier applied in Brown County case No. 2011CM602 and Shawano County case No. 2012CF120. They do not expressly state whether a domestic abuse surcharge was imposed or waived in those cases. That omission, while fatal to the State satisfying its burden of proof with regard to the PSI, *see supra* n.6, is not dispositive as to the issue of whether Hill admitted, through his no contest plea, that he qualified as a domestic abuse repeater. For purposes of that inquiry, we must determine whether the totality of the record demonstrates Hill understood the prior convictions on which the State was relying. Both the complaint and the Information expressly allege Hill was twice convicted of crimes for which a court imposed or waived a domestic abuse surcharge. Those allegations, combined with the CCAP reports, fairly apprised Hill that the State necessarily believed the convictions in Brown County case No. 2011CM602 and Shawano County case No. 2012CF120 included the imposition or waiver of a domestic abuse surcharge.

259

charge. First, the court reviewed with Hill the elements of the crime of disorderly conduct. Next, the following exchange took place regarding the domestic abuse modifier and the repeater and domestic abuse repeater enhancers:

THE COURT: Now, ordinarily, disorderly conduct is a Class B misdemeanor which is punishable by a fine of up to $1,000, or by imprisonment in the county jail for up to 90 days, or both. In this case we have a different penalty structure because there are two separate—well, three actually, penalty enhancers. One is that this is an act of domestic abuse that is that the disorderly conduct happened between you and a domestic partner. When the Court makes that finding, then the Court can impose a 100 [dollar] domestic abuse assessment, essentially a surcharge, to raise money to combat domestic violence, generally; do you understand that?

MR. HILL: Yes, your Honor.

THE COURT: You're also charged with a repeater enhancer, and that repeater is based on three misdemeanor convictions which are of record, and unreversed, so once we have those three prior convictions then you can have a repeater enhancer which can increase the penalty by up to, excuse me, by not more than two years; do you understand that?

MR. HILL: Yes, your Honor.

THE COURT: And if there has been a—there is another repeater enhancer in this case, because there is an allegation that you are [a] domestic abuse repeater, which means that you have been convicted on two separate occasions of either a felony or a misdemeanor in which the Court did impose, or could have imposed a domestic abuse surcharge. In other words, two prior domestic abuse incidents during the ten

years immediately prior to the commission of this offense, do you understand that?

MR. HILL:   Yes, your Honor.

THE COURT:   And when that's the case, then the maximum term of imprisonment may be increased by not more than two years, and which would mean ultimately two years and three months, or two years and ninety days as a maximum penalty. And the penalty itself, the repeater enhancer changes the status of the conviction here from a misdemeanor to a felony; do you understand that?

MR. HILL:   Yes, your Honor.

Immediately thereafter, the court posed two additional questions to Hill:

THE COURT:   Understanding the elements of the offense then, and the potential penalties, do you still wish to plead no contest?

MR. HILL:   Yes, your Honor.

THE COURT:   Do you have any questions for [defense counsel] or for me before I accept your plea[?]

MR. HILL:   No, your Honor.

¶ 25.   The plea colloquy and Plea Questionnaire/Waiver of Rights form demonstrate that Hill understood "the nature and consequences of the charges against him and the consequences of his plea." *See Liebnitz*, 231 Wis. 2d at 287. Notably, the colloquy here contained far more information regarding the applicable repeater enhancers than the plea colloquy in *Liebnitz*, during which the court did not even address the repeater enhancer. *See id.* at 282. In addition, the Plea Questionnaire/Waiver of Rights form in this case

specifically stated Hill committed the charged offense as a domestic abuse repeater, unlike the Request to Enter a Plea and Waiver of Rights form in *Liebnitz*, which did not state the defendant was a repeater. *See id.* at 281.

¶ 26.   In summary, by pleading no contest to the disorderly conduct charge, as alleged in Count 1 of the Information, Hill admitted the domestic abuse repeater allegation contained therein. *See Rachwal*, 159 Wis. 2d at 509 ("[W]hat is admitted by a guilty or no contest plea is all the material facts alleged in the charging document."). The totality of the record—in particular, the charging documents and attached CCAP reports, the Plea Questionnaire/Waiver of Rights form, and the plea colloquy—demonstrates Hill was "fully aware of the [domestic abuse] repeater charge and its consequences" when he entered his no contest plea.[8] *See Liebnitz*, 231 Wis. 2d at 285, 288. As

---

[8] In *State v. Liebnitz*, 231 Wis. 2d 272, 603 N.W.2d 208 (1999), the court generically referred to the "totality of the record" as supporting its conclusion that the defendant's plea constituted an admission that he qualified as an ordinary repeater. *Id.* at 288. That conclusion necessarily requires that the defendant's understanding of the meaning and potential consequences of the charges exists at the time of the plea. Indeed, the only record evidence the *Liebnitz* court cited in support of its conclusion predated the entry of the plea in that case. *See id.* at 285–87. Consistent with this approach, we conclude the alternative PSI Hill submitted does not support the notion Hill understood the meaning and potential consequences of the domestic abuse repeater enhancer at the time he entered his plea.

In addition, contrary to the State's assertion, the alternative PSI does not, by itself, constitute Hill's personal admission that he was a domestic abuse repeater. If a defense attorney's admission is insufficient to constitute a personal admission by the defendant, *see Farr*, 119 Wis. 2d at 659, it is difficult to

a result, Hill's no contest plea constitutes an admission that he was twice convicted of an offense for which a court imposed or waived a domestic abuse surcharge during the ten-year period preceding the commission of his disorderly conduct.

## II.  DNA surcharge

■

¶ 27.   Hill also argues the circuit court erred by refusing his request to vacate the DNA surcharge. The conduct underlying Hill's disorderly conduct conviction occurred on July 18, 2013. At that time, with certain limited exceptions, a court had discretion to order a DNA surcharge of $250 when it imposed sentence for a felony conviction. *See* WIS. STAT. § 973.046(1g) (2011–12). However, the legislature subsequently amended § 973.046 to require imposition of a $250 DNA surcharge for each felony conviction. *See* 2013 Wis. Act 20, §§ 2353–2355; sec. 973.046(1r)(a). This change first applied to sentences imposed on January 1, 2014. 2013 Wis. Act 20, §§ 9326(1)(g), 9426(1)(am). Hill was sentenced on June 9, 2014. As a result, the circuit court was required under the new law to impose a $250 DNA surcharge. Hill contends that, by making the surcharge mandatory instead of discretionary, the new law increased the punishment for his crime after its commission, in violation of the ex post facto clauses of the federal and state constitutions. *See* U.S. CONST. art. I, §§ 9–10; WIS. CONST. art. I, § 12.

---

understand how a PSI prepared by a third party can qualify. Moreover, like the State's PSI, the alternative PSI failed to specify whether a domestic abuse surcharge was imposed or waived in conjunction with any of Hill's prior convictions.

¶ 28. We recently rejected an identical argument in *State v. Scruggs*, 2015 WI App 88, 365 Wis. 2d 568, 872 N.W.2d 146. Scruggs committed a felony before Wɪs. Sᴛᴀᴛ. § 973.046 was amended to require imposition of the DNA surcharge, but she was sentenced after the new law went into effect. *Scruggs*, 365 Wis. 2d 568, ¶ 2. Accordingly, the sentencing court ordered her to pay a $250 DNA surcharge. Scruggs sought to vacate the surcharge, arguing "the change in the DNA surcharge from discretionary to mandatory could not be assessed against her without running afoul of the constitutional protections against ex post facto laws." *Id.*, ¶ 3. We rejected Scruggs' argument, concluding the new law did not impermissibly increase the punishment for her crime because: (1) in amending the statute, "the legislature was motivated by a desire to expand the State's DNA data bank and to offset the cost of that expansion, rather than a punitive intent"; and (2) Scruggs had not shown that the effect of the mandatory DNA surcharge was to impose a criminal penalty. *Id.*, ¶¶ 10, 18.

■

¶ 29. "Only the supreme court, the highest court in the state, has the power to overrule, modify or withdraw language from a published opinion of the court of appeals." *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). We are therefore bound by the holding in *Scruggs* and must reject Hill's argument that the mandatory imposition of the DNA surcharge in his case violated the ex post facto clauses of the state and federal constitutions.

*By the Court.*—Judgment and order affirmed.